OPINION of the Court, by
Judge Logan.
This cause stands upon a rehearing granted April term 1809. It is now our duty to pronounce such decree herein as will best conform to general and settled rules of equity, -
In November 1799, Briscoe and Burckhart executed their joint obligation to Lemaster for £. 730, to be paid on or beiore the first day of July 1801, in castings, &c. in consideration of a certain lease at Mann’s Lick lor the purpose of making salt.
On the 14th of August 1800, Burckhart sold Ms moiety in the lease to Joshua Hobbs, and paid Lemas» ter his half of the debt with bonds on Hobbs, which were payable-at the same time and in the same manner, as the one given by Briscoe anti him to Lemaster.
Upon executing this agreement Lemaster endorsed a credit on the obligation in these words : u Credit Christopher Burckhart by three obligations on Joshua Hobbs, lor half the amount of the within obligation, which I receive as a payment of his half the within obligation : Witness my hand and seal this 14th day of August 1800.”
On the 28th day of January 1801, Lemaster assign-cd this obligation to John Speed, who, on the 29th of July, commenced suit thereon. To which Burckhart píead; first,, the receipt on the obligation as a release td him; 2d, that Lemaster had agreed to acquit him in. consideration of Hobbs’s bonds.
In support of these pleas parol evidence was admitted to the jury, as well as the receipt on the obligation ; and the jury having found a special verdict, which required the opinion of the court as to the legal import of the receipt, upon the question being brought before this court, it was decided, spring term 1804, that it did not release Burckhart from his joint obligation for the other half of the debt.
Metre ended the controversy at la#. Burckhart then exhibited his bill for relief against the judgment at tawv
The equity in his bill may be comprised within these three allegations — 1st, The payment of half the debe, with bonds on Hobbs, which he charges were received and endorsed on the joint obligation in satisfacticjti of *26 his half. 2d, That independent of said receipt, h? can establish by unquestionable testimony that Lemaster declared, at the time of receiving and «indorsing the same, that he did forever acquit him from the said ob-ligati -n, and that he would look solely to Briscoe for the other half. And 3d, That Briscoe was able to pay his proportion of the debt, when the alleged contract with Lemaster was made , and that he, Burckhart, could have secured himself out of Briscoe’s property, if he had not rested upon the assurances of Lemaster, and the beliefi'he was discharged from his liability ; and that Briscoe becáme insolvent and died.
«ence of Sbac which not alleged can - not warrant a dea - — Accor. Morrjpn's tx'r. •sft, iió/tf ante 4
In investigating this cause, the court will consider — - 1st, the equity set forth in the bill; 2d, the trial at law and its effect in this suit; 3d, the endorsement on the obligation, and whether parol evidence was admissible to contradict or explain it; and 4th, the consideration upon which the complainant founds his claim for relief in this court.
With respect to the equity contained in the bill, Xt: ts essential that a complainant should shew in his bill sufficient equity to warrant a decree in his favor. That which is not in substance alleged, must be unavailing in proof. The decree must substantially conform to the equity in the bill; and evidence in support oí art equity cannot supply the want of it in a bill, more than evidence in relation to one claim in equity could justify a decree upon a bill charging a different one.
It has already been shewn that the complainant reste his first allegation on the endorsement credited upon the obligation, to which he refers iti support thereof. Viewing the endorsement as apart of the bill, stud then giving it its settled import, and this part of the bill cannot justify the interposition of a court of chancery, or warrant a decree against the settled meaning of the wri ting upon which it is made to depend.
The complainant then states in his hill, what he can prove, independent of the receipt endorsed on the obligation ; and it ⅛ this, that the defendant Lemaster had declared, at the time the payment was received in Hobbs’s bonds and endorsed on the obligation, that he forever discharged and did acquit the complainant of the said debt.
A voluntary promife without consideration, not to call on one of two ob = Iigors for any but half of the fum would nos. be binding,
This part of the bill presents two questions proper for consideration : 1st, Does the complainant Charge a fact repugnant to the receipt endorsed and before referred to in the bill ? 2d, If he does, what is its claim upon a court of chancery for enjoining the judgment at law?
The complainant having referred to the endorsement aforesaid as a part of his bill, and recognised it as true in fact, ought not to be understood as meaning to allege repugnant matter depending upon his own knowledge- and for the truth of which he means to be considered as responsible, without expressions of unequivocal import directly and substantially setting forth such matter.
if the contract were different from that evidenced by ".he receipt, the complainant was conusant thereof and could have charged it with certainty from his own knowledge. He does not state it as part of the contract, that he was to be discharged from all liability for the other half of the debt. He does not state it as |⅜ fact upon his own oath or information, that Lemaster did make the declaration set forth in the bill. The court can only say, if such were the fact and a part of the contract, the complainant must be presumed to have known it; arid if he knew it, he could safely have charged it directly and unequivocally in his bill; and not have rested upon stating merely what he could prove, without vouching for its correctness,.
But suppose the statement of what the complainant can prove was charged a^ a fact within his own knowledge ; it would by no means be satisfactory against the judgment at law, unless it went so far as to state it as a part of the contract, or the consideration which had induced the complainant to make it.
If the bargain had been understood and its terms agreed on, before the payment to Lemaster of the bonds on Hobbs and the endorsing of the credit, and Lemas-ter had then used such expressions as are stated in the bill, it would shew a case as strong as the one stated in this part of the bill; and the court could not esteem it more than a voluntary promise without consideration.
A voluntary declaration at the time the joint obligation was wrote, that the obligee would not call on either of the obligors, or take from him more than his half of the debt, would seem to form as strong ground for re *28 lief in chancery against a judgment at law , and yet sucir| a case it is conceived could not warrant chancery inter position.
fromtheeff-as i>f the co-obii-got before info! lonS ate** an» ground for relief Trbat the ci-ther co obligor has become in-fclyent, and but for the promife to hold the one tefponflble for his half, he could have fe-
, J}1* an-/ equity are th- tai„c — Acc «⅞1*4 ⅝
JParolevidence sot admintble to explain or contradrS a wri ting— Accord. Query ms White, ⅛. h p. »7,l.
If the endorsement on the obligation does not operate a release of the complainant, and there is no other allegation in his bill repugnant thereto ; or the statement in the bill just investigated, does not constitute a contract proper for relief in equity ; the circumstance relating to Briscoe’s insolvency can have no bearing in the case. Suppose, however, that the bill stated it as a part of t^e contract, that the complainant was to be acquitted and entirely absolved from the debt; ought a court of chancery to assume jurisdiction of the case and sustain injunction against the judgment, notwithstanding tile trial at law ?
The receipt plead in the trial at law as a release, ivas matter proper to be decided there ; and its meaning and rules of construction are the same in both courts. The’ question, at law was this, whether the said receipt as endorsed discharged the defendant from the debt ? The allegation in the bill depends on the same question. And it having been finally settled at law to be no discharge from the residue of the debt, so far as the question upon it is involved in equity, it ought to receive the same decision.,
The second plea in the trial at law was, that Lemas-ter agreed to discharge Burekhart in consideration of the bonds on Hobbs. The correspondent allegation m the bill in chancery is, that Burekhart could prove that Lemaster declared he forever acquitted him.
The subject matter embraced by the two pleas at law and alleged in the bill in chancery is the same. , It was plead and tried at law. If, therefore, the principle be a sound one, that when a fair and full trial at law has been fiad upon the merits of a cause, it ought not to be again investigated in chancery, unless for special circumstances shewn in the bill; and none being stated in this case, the relief asked ought not tq be granted.
With respect to the endorsement on the obligation, if it can be considered as containing the agreement between the parties, it is then conceived that parol evidence would be inadmissible to contradict or explain it. Viewing the receipt as a mere private memorandum of Lemas ters, and so not obligatory on Burekhart, the case *29 would then rest on parol evidence only, and Burclchart had the benefit of it at law, and therefore ought not tq be relieved in chancery, unless for special reasons not shewn in his bill. But considering the receipt, as the complainant seems willing to do, as the agreement between him, and the defendant, it is then conceived that It ought to be taken as conclusive in relation to that agreement. A contrary doctrine would introduce uncertainty into contracts that were supposed to be certain, and to depend on written evidence only. It would really introduce the absurdity of proving a contract by parol evidence, in order in the first place to ascertain the meaning of a writing, instead of relying; on the writing to test the extent of the contract.
If a writing j? 1"“nded 5j.“ tlkethemjured party may have rellci-
If a writing is fraudulent or founded in evident mis* take, the injured party may bring the fraud or mistake in issue, and whyn either satisfactorily appears, the court would relieve. But to refer to and recognise a writing in support of a material defence, without setting forth in what respect it was fraudulent, or in what mistaken, and in the same case to annex a meaning to it by parol evidence, is clearly inadmissible.
A recurrence to the complainant’s bill furnishes a very satisfactory instance of the danger of such a practice. He states “'that he endeavored to defend himself at law, by introducing the testimony of witnesses as to Temaster’s acknowledgments, but the witnesses not having a perfect recollection of the facts at that time, nothing went to the jury but the credit and receipt endorsed as aforesaid on the bond.”
The fact is the witnesses were examined in the suit at law, but perhaps at a different time ; for there were two juries. If the witnesses could not perfectly recollect at an earlier period, it is fair to presume that they might be ao far mistaken at a more distant one, as to show the impropriety in receiving their evidence to contradict or give meaning to the receipt endorsed.
It seems to the court that the object of the (¡ill is rather to prove the meaning of the endorsement, that’ to question its truth. By examining the bill the question would never occur, that the co-npL inaut meant to doubt the receipt, as endorsed on the obligation, la point of fact, ' ' ' ■ :
Forbearance to afe legal means by one party to fecure himfelf, at the requeft of the other party, and confequent loss, is good eondiderarion to a eoñíraíb
The court will now consider the consideration upon which the complainant applies for relief against the judgment at law.
It has been observed that a promise to acquit, without consideration, could not authorise a court of chan-eery to relieve the complainant from his obligation. It &ay now be added, that, if it clearly appeared to the court to have been intended by the parties that the re-, ceipt on the obligation was to release the complainant, but should appear tp have been without consideration, a court of chancery ought not to interpose in its behalf.
It is said that the payment with Hobbs’s bonds is the consideration. ’ This is true as to half the debt. But this is not controverted. It does not however meet the whole claim. The bonds On Hobbs amounted to no more than one half thereof: they became due at the same time apd were payable in the same manner, i^nd the evidence in the cause' in regard to Burckhart’s circumstances to pay, repels the presumption that the defendant was induced to change his debtor lest he might lose his debt. It would even then be questionable whether a court of chancery could view it as a sufficient consideration to afford relief.
But it is said that the promise by Remaster to acquit Burckhart has produced a loss to him, which operates as a consideration. The court will not controvert the position that if the complainant had proceeded in any regular manner justified by law, to secure himself on account of his liability for Briscoe, and the defendant had promised to acquit him and look to Briscoe only for his debt, provided he would forbear further proceedings, that the forbearance in such case and a consequent loss would furnish consideration, and the loss ought to be borne by the defendant.
Such, however, is not the case : so far from it, that the complainant himself states the sufficiency of Briscoe to pay at that time, and moreover that he remained so for some time thereafter.
This agreement, it will be recollected, was made oa the 14th of August 1800, and on the 28th of January following the note was assigned to Speed, and suit brought on the 29th of July.
So that the presumption is strong that no steps would have been taken by Burckhart against Briscoe, if It *31 could have been done, to secure himself against the other half of the debt, if no agreement or assurances had been made by Lemaster that he should be.discharged, and therefore no loss sustained thereby. The mere possibility that he might have been injured, is not enough to create a consideration. The injury must appear to have happened in consequence of an agreement clearly understood.
It pretty satisfactorily appears from the evidence in the cause that Briscoe’s circumstances were not sufficient to meet his part of the debt ; and indeed Burck-hart himself seems to have had doubts of Briscoe’s remaining solvent, for he refused tb enter his security to Henry Churchill for $ 100, about that time, notwithstanding their connection as relations and in the business of salt making.
This circumstance, combined with the evidence in the cause of Briscoe’s credit being considered on the de-dine, and supported by high prices for property, strong-Iy tend to shew that he was not in a situation to be ere-dited for a considerable sum.
The presumption is strong, that Burckhart, situated as he was, must have’foreseen the probable result ihre-gard to Briscoe’s insolvency. He then sells out hié interest to Hobbs, the Father-in-law to both him and Briscoe, and the agreement is made that Hobbs shall pay Lemaster half the price of the lease. But he did not become security for Briscoe’s half, for which Burck-hart was bound.
If the complainant had really considered Briscoe’s circumstances unquestionably good, it is fair to ptesume he would neither have taken measures against him to secure the sum he was bound to Lemaster for him, nor that it would have been a point with him to become released therefrom.
If, on the contrary, he foresaw when Briscoe must end, and he designed to exonerate himself from his responsibility upon the ignorance of Lemaster in tluiie spect, chancery ought not to aid him in consummating his design.
Perhaps to have made it a more direct point in the Agreement supposed, accompanied with real consideration, might have created suspicion with regard to Bris-coe’s sufficiency. The court cannot indulge presump- *32 tiorts on one hand, of consideration, of contract, &c. xo support of a claim against a judgment at law, when there is so much room to presume on the other.
To say the least of the contract thus formed, the evidence in the cause renders it extremely suspicious, Briscoe, it appears, sold out his interest,in the lease ¡to Vachel Hobbs, the brother-in-law to him and Burck-liart, and in part consideration thereof Vachel paid ®ff a note for g 500, which Briscoe owed to George Burck-hart, son of the complainant.
So that by a concatenation of the móst fortunate ac cidental hits, the insolvency of the brother-in-law and uncle is so shifted round,- that the debt from him to young Burckhart is secured out of Lemaster’s property leased as aforesaid, and the father, who stood bound for it, has so managed as in expectation to have worked himself out of his obligation, for no consideration whatever to Lemaster.
Wherefore it is decreed and ordered that the formei" opinion herein pronounced be set aside, and that the decree of the court below be also reversed and set aside 5 that the cause be remanded to the Jefferson circuit court, w.ith directions to dissolve the complainant’s injunction and dismiss Ins bill with costs, and that the plaintiff at law have the benefit of his judgment, with ten per centum on the amount thereof, which is ordered to be certifced ; and that the appellants recover their cost herein expended*